UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOSHUA TAYLOR,

    Petitioner,

 v.             CAUSE NO. 3:18-CV-436-DRL-MGG

WARDEN,

    Respondent.

OPINION & ORDER

Joshua Taylor, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Miami Correctional Facility (MCF 17-11-0390) in which he was found guilty of resisting staff. The court grants this petition.

The charge was initiated November 21, 2017. Officer A. Smith wrote a conduct report stating as follows:

> On 11-21-17 at approximately 7:05 AM I, Officer A. Smith, was walking past chow hall four when I observed an Offender who appeared to be out of place. I then confronted the offender and recognized him to be Offender Taylor, Joshua DOC#160810 from PHU 405. I asked him what he was doing and he said, "I'm out at rec." I then asked Sgt. A Burton if PHU was at recreation. Sgt. A. Burton informed me that PHU was at recreation in the recreation building. Offender Taylor's recreation was then canceled. Officer C. Bever and I escorted him to PHU. When we arrived in front of PHU, Offender Taylor refused to enter the housing unit and pulled away from me. I instructed him to go, "turn around and cuff up." He refused, so I asked Yard to "signal 8" Via the radio. When Sgt. A. Burton and Sgt. J. Thompson arrived on seen, Offender Taylor became more aggressive. He was once again verbally instructed to turn around to be placed in mechanical restraints. He refused and pulled away from Sgt. J. Thompson. At that time, Sgt. Thompson placed offender Taylor to the ground. Sgt. A. Burton and I, Officer A. Smith assisted Sgt. J. Thompson in gaining compliance and applied mechanical restraints to his wrists. Officer S. Kendall applied leg restraints. Sgt. A. Burton and I escorted Offender Taylor to RHU.

ECF 7-1 (errors in original). Staff witness statements were submitted, including the following statement from Sergeant J. Thompson:

> On 11/21/17 at approximately 7:05 AM, I Correctional Sergeant J. Thompson was on phase 2 yard and I observed Offender Taylor, Joshua DOC #160810 in front of PHU in the grass area with a couple of officers next to him. I talked to Correctional Sergeant A. Burton while he was heading to the area. He asked if I would assist with the situation at hand. We then went to the area and Sergeant Burton took charge of the situation and started giving verbal commands to submit to mechanical restraints and ordered me to place Offender Taylor into mechanical restraints. I tried to place Offender Taylor into mechanical restraints and he started resisting. I then placed Offender Taylor on the ground and secured his left hand. Officer A. Smith secured his right hand while Correctional Sergeant A. Burton secured his upper torso and Correctional Officer C. Bever secured his legs. I placed him into mechanical restraints. Correctional Officer S. Kendall then placed Offender Taylor into mechanical legal restraints. Offender Taylor was then escorted to Restrictive Housing Unit.

ECF 7-6.

On March 27, 2019, Mr. Taylor was formally notified of the charge. ECF 7-2. At screening, he requested a witness statement from the inmate housed in cell "P106," and review of the surveillance video for the date and time in question to show that he was "grabbed . . . for no reason" and that "Sgt. Tompson [sic] never grabbed me to restrain me." *Id.* Before the hearing, a statement was obtained from inmate D. Moran, who stated: "I seen Offender Taylor standing [illegible] 105 p dorm w/ his hands up. Then he got put on his ass. That's all I know. Couldn't hear the altercation."[1] ECF 7-4 (errors in original). The hearing officer reviewed the surveillance video from Phase 2 Yard for November 21, 2017, at 4:15 a.m. and concluded that "due to the positioning of the camera there is no video evidence of this incident." ECF 7-3.

On December 5, 2017, a hearing was held on the charge and Mr. Taylor was found guilty. ECF 7-10. As a result, he lost 30 days of earned-time credits and was demoted in credit-earning class. *Id.* His administrative appeals were denied. ECF 7-11; ECF 7-12. He then filed this petition. ECF 1.

When prisoners lose earned-time credits in a disciplinary proceeding, the Fourteenth Amendment due process clause guarantees them certain procedural protections: (1) at least 24 hours

---

[1] The court notes that inmate Mr. Moran's witness statement reflects that he resided in cell P449, whereas Mr. Taylor requested a witness statement from the inmate in cell P106. ECF 7-4; ECF 7-2. Mr. Taylor does not mention this apparent discrepancy or raise any claim about the witness statement in his petition. *See* ECF 1.

advance written notice of the charge; (2) an opportunity to be heard by an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the factfinder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there also must be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Mr. Taylor raises various grounds in his petition, including that he was denied evidence. ECF 1 at 3. The full panoply of rights available at a criminal trial are not applicable in the prison disciplinary context. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). Nevertheless, an inmate does have a right to request and present evidence when consistent with institutional safety and correctional goals. *Wolff*, 418 U.S. at 564.

Mr. Taylor claims that he was denied video evidence because the hearing officer did not review the surveillance video for the proper time. ECF 1 at 3. Upon review, the court concludes that this claim entitles Mr. Taylor to habeas relief. Specifically, the record reflects that Mr. Taylor timely requested a review of the video evidence from this incident, which in his view would show that the officer "grabbed [him] for no reason"—that he was not resisting. ECF 7-2. He also believed the video would directly undercut Sergeant Thompson's account. *Id.* The hearing officer reviewed the video, but for the wrong time. The documents submitted by the respondent show that the incident occurred at approximately 7:00 a.m., whereas the hearing officer reviewed the surveillance video at 4:15 a.m. ECF 7-3.

This error may have stemmed from discrepancies in reports about the incident's timing. The conduct report has an internal inconsistency, listing at the top that the incident occurred at 4:15 a.m. but identifying in its body that the incident occurred at 7:05 a.m. ECF 7-1. The witness statements submitted by other prison staff clarify that the incident occurred around 7:00 a.m. ECF 7-6; ECF 7-

7; ECF 7-8; ECF 7-9. The conduct report is also somewhat vague as to where the incident occurred (ECF 7-1), though the staff witness statements establish that this incident occurred in Phase 2 Yard (ECF 7-6; ECF 7-7; ECF 7-8; ECF 7-9). Mr. Taylor claims in his petition that the discrepancies or ambiguities in the conduct report prejudiced him by causing confusion about the date, time, and location of the underlying incident.

The respondent argues that this error is not significant because "[r]egardless of the time reviewed, there was not [sic] video available due to the camera positioning." ECF 7 at 6. This point seems to overstate the record. The hearing officer's report shows only that no incident could be viewed as of 4:15 a.m. ECF 7-3. The report doesn't say there were no cameras in the area that could have captured the incident. *See id.* Indeed, Mr. Taylor asserts without contradiction that there are three different cameras in Phase 2 Yard, including one directly across from the area where this incident occurred. ECF 20-1 at 2. Because the hearing officer never reviewed the video for 7:00 a.m., it is unknown whether the incident was visible on camera, and from any of three cameras. ECF 7-3.

Mr. Taylor was entitled to have this evidence considered, to the extent it was available. *See Hudson v. Knight*, 751 F. Appx. 897, 900 (7th Cir. 2018) (vacating and remanding where prison officials failed to review surveillance video for "possibly exculpatory video evidence" in accordance with inmate's request); *Piggie v. McBride*, 277 F.3d 922, 926 (7th Cir. 2002) (remanding for further proceedings on inmate's claim that disciplinary body failed to consider video evidence he requested, and holding that if inmate's request was timely, "relief should be granted"). Because the record shows that Mr. Taylor was denied evidence that he timely requested, he is entitled to habeas relief. Since the guilty finding must be vacated on this ground, the court doesn't reach the other claims in the petition. Prison officials remain free to charge Mr. Taylor again based on this same incident, as double jeopardy doesn't apply in the prison disciplinary context. *Meeks v. McBride*, 81 F.3d 717, 722 (7th Cir. 1996).

For these reasons, the court GRANTS the habeas corpus petition and ORDERS the respondent to file documentation by **November 30, 2020** showing that the guilty finding in MCF 17-11-0390 has been vacated and Mr. Taylor's earned-time credits restored.

SO ORDERED.

October 29, 2020                              *s/ Damon R. Leichty*
                                                                Judge, United States District Court